## Commonwealth ex rel. William Fagan *v.* Francies.

*Criminal law—Abduction of a female.*

1. The abduction of a female, without more, is not an indictable offense at common law; nor is it indictable under the Acts of March 31, 1860, P. L. 382, February 25, 1875, P. L. 4, May 28, 1885, P. L. 27, or April 4, 1901, P. L. 65.

*Criminal law—Pleading—Plea of guilty—Sentence without indictment—Act of April 15, 1907, P. L. 62.*

2. There is no statute, nor principle of the common law, which even upon a plea of guilty, will sustain a sentence to the penitentiary as for an infamous crime, in the absence of an accusation sufficient in substance to bring the case within the jurisdiction of the court imposing sentence.

3. Under the Act of April 15, 1907, P. L. 62, providing the procedure when a defendant pleads guilty, the court has no power to sentence such a person unless a bill of indictment in the usual form shall have been prepared by the district attorney, and the plea of guilty shall have been entered thereon.

4. In a criminal prosecution there was indorsed on the back of the justice's transcript the following words: "Oct. 10, 1910, I hereby waive the finding of the Grand Jury in within charge, and plead guilty thereto. William Fagan." The charge referred to in the transcript was: "The abduction of Laura Hammel, a female child under the age of sixteen years." No indictment was found by the grand jury, nor prepared by the district attorney, and the defendant was sentenced to the penitentiary without further proceedings. There was evidence that the prisoner had really been sentenced for statutory rape to which he had also pleaded guilty and for which he had been returned on the same day and by the same magistrate as the return for abduction, and that the clerk had made a mistake in recording the sentence. *Held*, that the sentence was illegal, and that the prisoner was entitled to his discharge in habeas corpus proceedings.

5. While a writ of habeas corpus is not a writ of error, a prisoner is entitled to the benefit of it, where he has been sentenced and imprisoned under an illegal and void judgment.

Argued February 25, 1913.

Petition in the Superior Court for writ of habeas corpus. Miscellaneous Docket No. 5, No. 546.

The petition averred as follows:

1. That the said court of quarter sessions of Blair county was without jurisdiction to sentence the said William Fagan to an imprisonment in said Western Penitentiary for the term of ten years upon the record as shown in this case.

2. That no bill of indictment was prepared by the district attorney and filed in the said court of quarter sessions of Blair county against the said William Fagan, charging him with an offense against the law.

3. That as shown by said record a complaint was made against the said William Fagan by one James Hammel, before D. E. Sell, Esq., a justice of the peace in and for Blair county, on October 7, 1910, charging him with an alleged offense, named in said record as abduction, and upon said complaint said justice issued a warrant for the arrest of the said William Fagan upon said charge, and placed the same in the hands of G. A. Hoenstine, constable, who arrested the said William Fagan on October 10, 1910, and brought him before the said justice of the peace, who on October 15, 1900, committed the said William Fagan to the county jail of Blair county, there to await trial at the next court of the quarter sessions of Blair county, and that on October 17, 1910, the said William Fagan was brought before the said court of quarter sessions of Blair county, and without any indictment having been prepared by the district attorney, charging the said William Fagan with an offense against the law, the said William Fagan signed the following waiver, written on the back of the transcript of the said justice of the peace, to wit:

"October 17, 1910.   I hereby waive the finding of the Grand Jury in the above charge and plead guilty thereto.
                        " (Signed) WILLIAM FAGAN."

And that the said court, on said date, upon said alleged plea of guilty, sentenced the said William Fagan to pay costs of prosecution and undergo an imprisonment in the

Western Penitentiary for and during the period of ten years. The said alleged waiver by the said William Fagan, and alleged plea of guilty made by him, and the sentence of the court is without warrant of law and is wholly void.

4. Before the said William Fagan could have been sentenced by the court, a bill of indictment should have been prepared charging the said William Fagan with an indictable offense, and the same presented to the grand jury, and by them found to be a true bill, and the said William Fagan tried and found guilty thereon, or have pleaded guilty to said indictment. The Act of Assembly of April 15, 1907, P. L. 62, allowing a person charged with the commission of a crime to plead guilty to an indictment without the same having been sent to the grand jury and passed upon by them is unconstitutional.

5. That even though said Act of April 15, 1907, P. L. 62, is constitutional, the same provides that the district attorney shall prepare a bill of indictment in the usual form before a plea of guilty be entered thereon by the defendant. In the present proceedings there was no bill of indictment prepared or filed in the case.

6. The sentence and imprisonment of the said William Fagan is void as being in violation of the declaration of rights of the constitution of Pennsylvania, sec. 6, which provides as follows:

"Trial by jury shall be as heretofore and the right thereof remain inviolate."

7. The sentence and imprisonment of the said William Fagan is void as being in violation of the declaration of rights of the constitution of Pennsylvania, sec. 9, which provides as follows:

"Nor shall he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land."

8. The sentence and imprisonment of the said William Fagan is in violation of that clause of the fourteenth amendment of the constitution of the United States, which provides:

"Nor shall any State deprive any person of life, liberty or property without due process of law."

And the said clause is especially invoked and pleaded in this case.

9. Abduction is not an indictable offense in Pennsylvania.

10. The complaint made against the said William Fagan does not charge an indictable offense.

11. The court of quarter sessions of Blair county was without power and authority to sentence the said William Fagan to an imprisonment of ten years upon the charge of abduction, even though there had been an indictment against him charging said offense.

That the said William Fagan was not represented by counsel at the time of his sentence in the court of quarter sessions of Blair county; that by reason of poverty he has no means whatsoever to pay the costs of printing this petition.

Wherefore, petitioner humbly prays your honorable court to issue a writ of habeas corpus for the relief of the said William Fagan agreeably to law.

*R. A. Henderson,* for relator.—The sentence and commitment are void for the reason that there was no indictment: Mills v. Com., 13 Pa. 627; People v. Granice, 50 Cal. 447; State v. Burnett, 119 Ind. 392 (21 N. E. Repr. 972); Com. v. Adams, 92 Ky. 134 (17 S. W. Repr. 276); Newcomb v. State, 37 Miss. 383; Batchelder v. Currier, 45 N. H. 460; People v. Campbell, 4 Park. Cr. (N. Y.) 386; State v. Queen, 91 N. C., 659; Rice v. State, 50 Tenn. 215; McGinnis v. State, 28 Tenn. 43; Com. v. Mahar, 33 Mass. 120.

The sentence and commitment are void because neither the complaint nor the transcript of the justice of the peace charge an indictable offense: Com. **v.** Ketner, 92 Pa. 372.

The Superior Court has jurisdiction to release the petitioner by habeas corpus: Geyger v. Stoy, 1 Dall. 135;

Com. v. Smith, 11 W. N. C. 34; Com. v. Nuber, 6 Pa. Superior Ct. 420; Com. v. Gibbons, 9 Pa. Superior Ct. 533; Com. v. Keeper of County Prison, 11 W. N. C. 267; Com. v. Shortall, 206 Pa. 165; Com. v. Ketner, 92 Pa. 372; Com. v. Perkins, 124 Pa. 36; Gosline v. Place, 32 Pa. 520; Com. v. Keeper of Workhouse, 6 Pa. Superior Ct. 420; Com. v. Seechrist, 27 Pa. Superior Ct. 423; Com. v. Green, 185 Pa. 641.

The crime of rape is triable exclusively in the court of oyer and terminer: Hazlett v. Com., 1 Pitts. 169; Dougherty v. Com., 69 Pa. 286.

*Marion D. Patterson,* district attorney, for appellee.— The record was properly amended: Com. v. Wright, 126 Pa. 464; Com. v. Johnson, 236 Pa. 412; Kilpatrick v. Com., 31 Pa. 198.

The constitutional provision that there can be no conviction or punishment for a crime without a formal indictment and trial by a jury of twelve men, may be waived in Pennsylvania, by the accused. Surely if the accused has the right to waive the finding of a grand jury and trial by a jury of twelve men, he should be permitted to waive the preparation of a formal indictment by the district attorney, which affects the form and not the substance of the crime charged: Lavery v. Com., 101 Pa. 560; Com. v. Beard, 48 Pa. Superior Ct. 319.

The provision of sec. 1 of act of April 15, 1907, P. L. 62, providing that the district attorney shall prepare a bill of indictment in the usual form, is directory rather than mandatory, and the omission of said indictment being a formal defect, objections, if taken at all, must have been by motion in arrest of judgment and being amendable, such defect is cured by a plea of guilty which is of the same effect as a verdict of guilty, and is not available to set aside the sentence therein: Com. v. Ramsey, 1 Brewster, 422; Com. v. Jessup, 63 Pa. 34; Rolland v. Com., 82 Pa. 306; Com. v. Monroe, 15 Philadelphia, 379; Com. v. Kay, 14 Pa. Superior Ct. 376; Gorman v. Com., 124 Pa.

536; Phillips v. Com., 44 Pa. 197; Com. v. Hill, 2 Pearson, 432; Com. v. Newcomer, 49 Pa. 478; Com. v. Frey, 50 Pa. 245; Campbell v. Com., 59 Pa. 266; Com. v. Kelly, 10 Lanc. Bar, 107; Traviss v. Com., 106 Pa. 597.

OPINION BY RICE, P. J., April 21, 1913:

It is stated in the return to the writ of habeas corpus now before us for disposition that the relator is held and detained by the respondent in the Western Penitentiary of Pennsylvania by virtue of a commitment from the court of oyer and terminer of Blair county, in a case at No. 5, R. D. Jan. Sess., 1911. The copy of the commitment attached to the return sets forth the title of the court and of the case and then, so far as material here, reads as follows: "Indictment, Abduction. Defendant waives the finding of a true bill, 19th October, 1910. Defendant pleads guilty October 19th, 1910. And now, November 7th, 1910, the court sentences the defendant, William Fagan, to pay a fine of one hundred ($100) dollars to the Commonwealth, pay the costs of prosecution, . . . . and undergo an imprisonment in the Western Penitentiary of Pennsylvania, . . . . for and during the period of ten years, there to be kept," etc. This purports to be signed by the president judge and witnessed by the clerk.

From the record of the proceedings in the court of quarter sessions of Blair county, at No. 5, R. D. Jan. Sess., 1911, which was sent up to us in obedience to the ancillary writ of certiorari, we ascertain, that on October 15, 1910, the relator was committed to jail by a justice of the peace to await trial at the next court of quarter sessions, on the charge of "the abduction of Laura Hammel, a female child under the age of sixteen years," and that after the justice's return of these proceedings was made to the quarter sessions, and the case was entered in the docket of that court as a charge of abduction, the defendant by "writing filed" waived the finding of the grand jury, pleaded guilty, and was sentenced to pay a fine of $100 and undergo an imprisonment in the peni-

tentiary for the term of ten years. The "writing filed," here referred to as containing the waiver and plea, was the indorsement on the back of the justice's transcript filed in that case, which reads as follows: "Oct. 19, 1910, I hereby waive the finding of the Grand Jury in within charge and plead guilty thereto. William Fagan."

It is seen from the foregoing recital that, according to the commitment and the only commitment produced by the respondent as his warrant for detaining the relator, as well as according to the plain and unambiguous averments of the record, as it stood at the time the commitment issued, and at the time this writ of habeas corpus was applied for, the charge to which he pleaded guilty and upon which he was sentenced was abduction. Passing for a moment the question whether the court had power to sentence him without an indictment being found by the grand jury or prepared by the district attorney, as provided by the Act of April 15, 1907, P. L. 62, there remains the insuperable objection that the charge as set forth in the commitment and record is not made an indictable offense by any statute of this commonwealth. It is not indictable under sec. 94 of the Act of March 31, 1860, P. L. 382, because it is not alleged that the female was under ten years of age; nor under sec. 1 of the Act of February 25, 1875, P. L. 4, for the same reason and also because it is not alleged that there was the intent to extort money or other valuable thing; nor under sec. 1 of the Act of April 4, 1901, P. L. 65, for the latter reason; nor under sec. 1 of the Act of May 28, 1885, P. L. 27, because it is not alleged that the female was taken or enticed for any of the purposes mentioned in that act. And according to the great weight of authority, the mere "abduction" of a female is not an indictable offense at common law unless accompanied with other circumstances which would of themselves be unlawful or constitute an offense, as, for example, conspiracy: State v. Sullivan, 85 N. C. 506; 1 Cyc. of Law & Pro. 142. We hold, therefore, that the record at No. 5 R. D. Jan. Sess., 1911, is not sufficient

to sustain the relator's sentence and commitment to the penitentiary.  It follows that if there be no other legal cause for his detention he is entitled to be discharged: Com. ex rel. v. Ketner, 92 Pa. 372.

The foregoing conclusion is not seriously questioned by the district attorney.  His contention is that the relator was not sentenced in the abduction case but was sentenced upon a charge of statutory rape at No. 4, R. D. Jan. Sess., 1911, and that by mistake the sentence was entered by the clerk in the record of the abduction case. In view of this contention we awarded a writ of certiorari to bring up the record in No. 4, R. D. Jan. Sess., 1911.  It appears by the record and proceedings thus brought up, that on the same day that the relator was committed by the justice of the peace to answer the abduction charge, he was committed by the same justice to answer the charge of (we quote from his transcript) "Statutory rape and adultery on the person of Laura Hammel, a female child under the age of sixteen years, said defendant being a married man, having a wife now living."  This case was entered in the quarter sessions docket at No. 4, R. D. Jan. Sess., 1911, with the words to designate the offense "Charge—Felony—Statutory Rape," and then follows the entry: "October 17, 1910, defendant by writing filed waives the finding of the grand jury and pleads guilty to the above charge."  No paper containing this waiver and plea is found in the files of the case, and the clerk by a paper attached to the exemplification of the proceedings certifies that no such paper was ever filed in that case and that the entry as above noted was erroneously made by him.  The certificate of the president judge and the former district attorney is not in conflict with the clerk's certificate, so far as the filing of the paper is concerned; their certificate being "that the relator appeared in open court, waived the finding of the grand jury and plead guilty to the charge of statutory rape to No. 4, R. D. Jan. Sess., 1911, and on the same day, in the court of quarter sessions of Blair county the said William Fagan waived

the finding of the grand jury and plead guilty, in writing, to the charge of abduction, to No. 5, Jan. Sess., 1911." There is fair ground for inference from these two certificates and the state of the files, that the paper referred to as having been filed was the paper filed in the abduction case to which we have referred. But although, as has been seen, the plea and waiver therein contained related only to the charge of abduction, we cannot say that this completely overthrows the presumption arising from the record in No. 4, Jan. Sess., 1911, that, either by writing, or orally at the bar of the court, the relator waived the finding of the grand jury and pleaded guilty to the charge there noted. That record, however, as it stood at the time the relator was committed to the penitentiary and for nearly two years afterwards, showed no sentence in that case. But after the writ of habeas corpus was applied for, and while the rule to show cause why it should not be issued was pending, the court made the following order in the case:

"Now, November 4th, 1912, on motion of Marion D. Patterson, District Attorney in and for the County of Blair, representing that on the 7th day of November, 1910, the sentence of this court imposed on the defendant in the above stated case, directing that the said William Fagan, Defendant, should pay the costs of prosecution, and undergo imprisonment in the Western Penitentiary for a period of ten years, instead of being entered to the record of the same, was erroneously noted to No. 5, T. D., January Sessions, 1911, wherein said defendant was charged with and plead guilty to the crime of abduction, and it being clear in the mind of the Court that said sentence was imposed in the statutory rape case, and not in the abduction case as the record shows, and the same being a clerical error on the part of the Clerk of said Court, it is hereby ordered, decreed and directed that the record be amended and corrected and the sentence in the abduction case to No. 5, R. D., January Sessions, 1911, be stricken off, and the same entered in the statutory rape case to No. 4, January Sessions, 1911."

While there was nothing in the docket entries or in the files to show that by the clerical mistake the sentence was noted in the wrong case, as was the fact in Com. v. Wright, 126 Pa. 464, yet it is not seriously disputed that the court had power to make the amendment, if the facts within its recollection warranted it. The objection that it was made without notice to the relator, and affording him an opportunity to contest it, goes only to the regularity of the proceedings and cannot be taken advantage of on writ of habeas corpus; therefore we take the record in No. 4, R. D., January Sessions, 1911, as it stands amended.

But it is contended that even as amended it does not show a legal cause for the relator's detention for the following reasons: (1) the court of quarter sessions had not jurisdiction to sentence the relator for the crime of rape; (2) the defendant did not enter a plea of guilty in that case; (3) there was no indictment against the relator; (4) the complaint does not charge statutory rape; 5, the Act of April 15, 1907, P. L. 62, is unconstitutional. The jurisdiction to sentence one convicted of the crime of rape is in the oyer and terminer and not in quarter sessions, and it does not appear that this case was originally entered or afterwards certified into the oyer and terminer. But if an indictment in the usual form had been prepared by the district attorney, and the plea of guilty had been entered thereon, as provided by the act of 1907, we are not prepared to say that the case could not be certified nunc pro tunc into the oyer and terminer, even after sentence. See Brown v. Com., 78 Pa. 122. But there was no indictment and the charge as set forth in the proceeding before the justice did not contain all the essential elements of the crime for which the relator is said to have been sentenced. It is an elementary principle that there can be no conviction and punishment without a formal and sufficient accusation, and this principle is recognized in both the federal and the state constitutions. Under our statutes many formal defects are cured or waived by pleading guilty, but we know of no statute or principle of the

common law, which, even upon a plea of guilty, would sustain a sentence to the penitentiary as for an infamous crime, in the absence of an accusation sufficient in substance to bring the case within the jurisdiction of the court imposing sentence; and after careful and deliberate consideration we conclude, that independently of the act of 1907 the court would not have had jurisdiction to impose the sentence in question, without the relator having been presented or indicted by the grand jury. See Ex parte Wilson, 114 U. S. 417; Ex parte Bain, 121 U. S. 1. This contention is not in conflict with Lavery v. Com., 101 Pa. 560, or Com. v. Beard, 48 Pa. Superior Ct. 319, because, amongst other reasons, both of these decisions relate to minor offenses and not to high felonies, falling within the exclusive jurisdiction of the oyer and terminer, to the conviction of which infamous punishment is attached. Moreover, the defendant's consent, which in each of those cases was held effectual, was clear, express and unambiguous. The question therefore arises whether the act of 1907 gave the court jurisdiction. It reads as follows: "That whenever hereafter, within this Commonwealth, any person is charged with the commission of any crime, and such person is willing to enter a plea of guilty, and shall notify the District Attorney to that effect, no bill of indictment charging such offense shall be sent to a grand jury; but the district attorney shall at once prepare a bill of indictment, in the usual form, and the plea of guilty shall, at the request of the said defendant or defendant's counsel, be entered thereon, and the court of the proper county at any session thereof, shall thereupon, forthwith, impose sentence for the offense set forth therein: Provided, however, That nothing in this act shall be construed so as to relate to, or change the proceedings in, homicide cases in this Commonwealth: And provided further, That the defendant may withdraw his plea of guilty, at any time before sentence, by leave of the court."

It is to be noticed first, that the indictment must be in the usual form; that is, it must charge the crime sub-

stantially in the language of the act prohibiting the crime and prescribing the punishment, if any such there be, or if at common law, so plainly that the nature of the offense charged may be easily understood; secondly, the plea of guilty must be entered thereon. There is considerable force in the contention that the plea must be actually entered on the indictment itself, and it is certainly desirable that this be done, for if it be, there can never be such unfortunate uncertainty as is presented here as to the charge to which the defendant pleaded guilty or as to the crime for which he was sentenced. But, be that as it may, the statute clearly implies that the defendant's plea must be to an indictment, and therefore, even if it be not indorsed on the indictment, the record must show with certainty what indictment he pleaded to. Thirdly, the court is to "impose sentence for the offense set forth therein." By no liberality or ingenuity of construction can this be held to mean the offense indicated by brief docket entries such as we have here; it plainly and beyond all controversy, means the offense set forth in the indictment. There are many good reasons why the legislature, in prescribing the conditions under which a person may be sentenced without the finding of a grand jury, should make it an essential prerequisite that an indictment in the usual form be prepared and sanctioned by the district attorney. It is essential to the protection of the accused in his right to be informed as to the precise accusation to which he is to plead, and if convicted by his own confession, as to the precise crime and the lawful punishment prescribed therefor for which he is to be sentenced. It is essential also in order that the judgment shall be so certain as to enable him to plead it effectually to a subsequent prosecution for the same offense. To hold that this provision is merely directory, and that want of compliance with it is a mere informality which is cured or waived by a premature plea of guilty, would not be warranted either by the letter or spirit of the act, and would be in contravention of general principles universally

recognized as most material in the administration of
punitive justice. The very case we have before us shows
the confusion and uncertainty that are likely to result if
it be held that the statutory safeguards may be disre-
garded or treated as mere technicalities and not as matters
of substance. If an accused is to be deemed to have
waived them, and to have consented to be sentenced to
infamous punishment, such waiver and consent must be
affirmative and express, and may not be rested on doubt-
ful and uncertain inference. Accepting as verity the entry
in the docket in No. 4, R. D., Jan. Sess., 1911, and there-
fore assuming that the entry was based on a paper filed
in that case, although no such paper can be produced,
what further waiver can be implied with certainty than
the waiver of the finding of the grand jury? But this
would not relieve the district attorney from the duty of
preparing an indictment in the usual form or reasonably
lead anyone to suppose that that was waived. Nor was
a plea of guilty to the indefinite charge noted in the
docket tantamount to a plea of guilty to an indictment
that the relator was entitled to have prepared, so that it
would become part of the record, before he could be
sentenced. His waiver of the finding of the grand jury
and plea laid ground for further proceedings in accordance
with the provisions of the statute, but did not dispense
with compliance with them, nor give the court jurisdiction
to sentence him if they were not complied with. In short,
he did not, by waiving the finding of the grand jury and
pleading guilty to the indefinite charge "Statutory Rape,"
consent to be sentenced without indictment, any more
clearly than he would be deemed to have given such
consent by pleading guilty before the justice of the peace.

"A judgment may be erroneous and not void and it
may be erroneous because it is void:" Ex parte Lange, 85
U. S. 163. It is settled by numerous decisions that a writ
of habeas corpus cannot be used as a substitute for a writ
of error or appeal for the correction or setting aside of
all erroneous judgments in criminal cases. But, it does

not necessarily follow, and the decisions do not hold, that the fact that the prisoner is held by virtue of a judgment precludes him from resorting to a writ of habeas corpus, in order to be relieved from unlawful imprisonment. Thus, in Passmore Williamson's Case, 26 Pa. 9, it was said: "A habeas corpus is not a writ of error. It cannot bring a case before us in such a manner that we can exercise any kind of appellate jurisdiction in it. On a habeas corpus, the judgment even of a subordinate court cannot be disregarded, reversed or set aside, however clearly we may perceive it to be erroneous, and however plain it may be that we ought to reverse it if it were before us on appeal or writ of error. We can only look at the record to see whether a judgment exists, and have no power to say whether it is right or wrong. It is conclusively presumed to be right until it is regularly brought up for revision." But this emphatic utterance must be read in connection with the further declaration by Justice BLACK in the same opinion, "It is certainly true, that a void judgment may be regarded as no judgment at all; and every judgment is void which clearly appears on its own face to have been pronounced by a court having no jurisdiction or authority in the subject-matter." In Ex parte Lange, which has always been regarded as a leading case, it was held that when a prisoner by virtue of a valid judgment has fully suffered one of the alternative punishments to which alone the law subjected him, the power of the court to punish further was gone, therefore he is entitled to be relieved from imprisonment under a second sentence. Justice MILLER said: "Unless the whole doctrine of our system of jurisprudence, both of the Constitution and the common law, for the protection of personal rights in that regard, are a nullity, the authority of the court to punish the prisoner was gone. The power was exhausted; its further exercise was prohibited. It was error, but it was error because the power to render any further judgment did not exist.

It is no answer to this to say that the court had juris-

diction of the person of the prisoner, and of the offense under the statute. It by no means follows that these two facts make valid, however erroneous it may be, any judgment the court may render in such case. If a justice of the peace, having jurisdiction to fine for a misdemeanor, and with the party charged properly before him, should render a judgment that he be hung, it would simply be void. Why void? Because he had no power to render such a judgment. So, if a court of general jurisdiction should, on an indictment for libel, render a judgment of death, or confiscation of property, it would, for the same reason, be void. Or if on an indictment for treason the court should render a judgment of attaint, whereby the heirs of the criminal could not inherit his property, which should by the judgment of the court be confiscated to the state, it would be void as to the attainder, because in excess of the authority of the court and forbidden by the Constitution." The same principle was followed and applied in Com. v. Keeper of Workhouse, 6 Pa. Superior Ct. 420, and it is applicable here as a complete answer to the proposition that the relator's sole and exclusive remedy was by appeal. It should be remarked also that the record in No. 4, R. D., Jan. Sess., 1911, did not show any judgment against him until long after the time for appeal had expired, and the commitment, as we have seen, recites no judgment against him in that case.

The objection that the case was not certified into the oyer and terminer may be regarded as technical, but the objection that no court had power to impose the sentence, except upon an indictment, without the relator's express and unequivocal consent, is not technical but substantial. It goes to the jurisdiction of the court just as effectively as if the sentence had been imposed after the power of the court was exhausted.

It is urged that the discharge of the prisoner will establish a bad precedent. We do not think so. A bad precedent cannot be established by a decision according to law, even though it may result in the party's escape from

the full measure of punishment he deserves. A bad precedent would be established by holding that the provisions of the act of 1907 are directory only, and may be treated as relating to mere matters of form.

After careful and deliberate consideration of the commitment under which the relator is detained and the record of the case in which it was issued, as well as the record of the case at No. 4, R. D., Jan. Sess., 1911, as amended after this writ was applied for, we conclude that the sentence was pronounced without authority and therefore the relator is entitled in law to be discharged.

The relator is discharged.